**NORTHBOROUGH CORPORATE LIMITED PARTNERSHIP, L.L.P., Appellant,**

v.

**CUSHMAN & WAKEFIELD OF TEXAS, INC., Appellee.**

No. 14–04–00364–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 21, 2005.

---

Mary A. Van Kerrebrook, Houston, for appellant.

Arthur Val Perkins, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

This appeal arises from a suit Cushman & Wakefield of Texas, Inc. ("Cushman") filed for lease brokerage commissions allegedly due it from Northborough Corporate Limited Partnership, L.L.P. ("Northborough"). Although both parties moved for summary judgment, the court granted Cushman's motion. Northborough now appeals both that decision and the trial court's denial of Northborough's own motion for summary judgment.

## Factual Background

Cushman, the plaintiff below, is a real estate brokerage firm. Northborough owns a Houston office building that was the subject of a lease brokerage commission agreement between Cushman and the building's former owner, Alliance Enterprises, Inc.[1] This appeal's factual background is complicated not only by the change in the building's ownership, but also by the fact that the original lease was renewed and assigned several times. The parties dispute whether the present lease was a "new arrangement" that negated Northborough's obligation to pay Cushman's commissions under a previous lease, and whether Northborough assumed Alliance's obligation to pay Cushman's commissions under a subsequent lease agreement.

### Cushman and Alliance enter into a commissions agreement (Texaco lease).

In 1988, Alliance agreed to pay Cushman a real estate brokerage commission if Texaco or any of its affiliates, subsidiaries, or nominees became a tenant of Alliance's office building. Texaco did become a tenant of the building. The schedule of commissions provided that, if the lease was renewed or extended, or if a tenant leased additional space, Alliance would pay an additional commission to Cushman. The schedule of commissions obligated Alliance to pay Cushman's commissions in the event Alliance sold its interest in the property, and also obligated Alliance to ensure that the new owner agreed in writing to assume Alliance's obligation to pay Cush-

---

1. Alliance was Northborough's predecessor in interest, having sold the building to Northborough in 1998. Alliance was also a defendant below but is not a party to this appeal.

man's commissions under the agreement. The parties agree that Alliance fully paid Cushman's commissions related to the Texaco lease.

### Texaco assigns its lease to Star Enterprises (Star lease).

In 1993, Texaco assigned its lease of the office building to Star Enterprises. Star Enterprises was a joint venture between Texaco and Aramco Services. When the original Texaco lease ended in 1994, Alliance entered into a "Renewal and Amendment of Lease" with Star. The Star lease was for a ten-year term beginning August 1, 1994 and ending in August of 2004. Cushman acted as the lease broker for Star and, once again, Alliance agreed to pay Cushman's commission. Again, the parties agree that Alliance paid Cushman's commissions while Star was the building's tenant. Like the original Texaco lease, the Star lease permitted Star to assign its lease, which Star later did.

### Alliance sells the building to Northborough.

Four years into the Star lease, Northborough purchased the office building from Alliance. In the purchase agreement, Northborough agreed to assume Alliance's obligation to pay Cushman's commissions with respect to the Star lease. Cushman did not represent Alliance or Northborough in connection with the purchase of the office building.

### Equiva leases from Northborough (Equiva lease).

In August of 1999, with five years remaining on the Star lease, Star assigned its lease to Equiva, a Texaco joint venture between Texaco and Shell Oil Company. Cushman did not participate in the lease negotiations and, in the Equiva lease, Equiva and Northborough represented they did not have a broker.

Immediately after this, Northborough entered into an "Amended and Restated Lease" with Equiva. At that point, Northborough stopped paying Cushman's commissions and refused Cushman's demands to do so.

### Procedural History

In 2002, Cushman sued Alliance and Northborough, seeking commissions for the remaining time period on the ten-year Star lease. Alliance was dismissed from the suit because it was dissolved more than three years before Cushman filed suit. Cushman filed a motion for partial summary judgment asserting that Northborough owed it commissions based on the Star lease. The trial court granted Cushman's motion for partial summary judgment but denied Northborough's motion for summary judgment, in which Northborough gave several reasons Cushman could not prevail. In the final judgment, the trial court found that Northborough was liable to Cushman for Cushman's commissions through August of 2004—when the Star lease would have ended—and also awarded Cushman reasonable and necessary attorney's fees. This appeal followed.

### Standard of Review

Because both Cushman and Northborough moved for summary judgment and the trial court granted Cushman's motion and denied Northborough's, we must determine all questions that were presented to the trial court. *FM Props. Oper. Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) ("When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented.") (citing *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997)). Each party

"bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000) (citing *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993)). When a trial court's order granting summary judgment does not specify the grounds, we must affirm if any of the summary judgment grounds have merit. *FM Props. Oper. Co.*, 22 S.W.3d at 872 (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995)).

Northborough asserts the trial court erred in concluding that Northborough assumed Alliance's obligation to pay commissions on the Equiva lease. Additionally, Northborough urges us to find that the original lease commission agreement between Alliance and Cushman is void because it lacks a termination date. Alternatively, Northborough argues that, should we find Northborough fully assumed Alliance's obligations under the original commission agreement and the agreement is enforceable, the trial court erred in granting Cushman's motion for summary judgment because it raised a fact issue as to whether the Equiva lease was a "new arrangement," meaning that Cushman would not be entitled to any commission for the Equiva lease.

Cushman contends the original commission agreement is enforceable. Cushman also asserts that Northborough was obligated to pay Cushman's commissions until the expiration of the Star lease in 2004 because Northborough assumed Alliance's obligation to do so and because the Equiva lease did not supersede or vitiate the Star lease.

■ The parties' arguments require us to construe Cushman's commission agreement, which no one claims is ambiguous. When we construe a contract, we are to seek the parties' intent as expressed in the contract. *J.M. Davidson, Inc. v. Web-*

*ster*, 128 S.W.3d 223, 229 (Tex.2003) (stating court's primary concern is to ascertain the parties' true intentions as expressed in the instrument); *Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.*, 123 S.W.3d 735, 743 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (same). We must give effect to all of the contract's clauses and read them in such a way that any potential conflicts are harmonized. *See Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983); *see also Derr Constr. Co v. City of Houston*, 846 S.W.2d 854, 862 (Tex. App.-Houston [14th Dist.] 1992, no writ) (stating court should examine the entire writing "seeking to harmonize and reconcile the conflicting provisions to the greatest extent possible") (citations omitted).

### Analysis

We will first address whether the original lease commission agreement is void, as Northborough suggests, because it lacks a termination date.

**The original lease commission agreement is not void for lack of a termination date.**

■ As Northborough points out, the original lease commission agreement between Cushman and Alliance does not contain an express termination date. Northborough argues that this makes the commission agreement unenforceable. In response, Cushman argues that a termination date is not required, but if it is required, the date is supplied by the underlying lease. Because we reject Northborough's argument that an express termination date is statutorily required under the facts of this case as a prelude to recovery, we do not address whether the termination date could be supplied by implication from the underlying lease.

■ Our determination is guided by section 1101.806(c) of the Real Estate Li-

cense Act, which governs when a person may sue to recover a commission for the sale of real estate. "A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or a person authorized by that party to sign the document." TEX. OCC. CODE § 1101.806(c). Thus, to be actionable—and, consequently, enforceable—a commission agreement must be "in writing and signed by the party to be charged." *Trammel Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 635 (Tex.1997). These code provisions governing the recovery and payment of commissions consider a lease a "sale" and therefore also allow recovery of a commission for a lease. TEX. OCC.CODE § 1101.002(5). The commission agreement between Alliance and Cushman clearly satisfies these requirements—the agreement is in writing and is signed by the executive vice president of Alliance.

■ Northborough, relying on section 1101.652(b)(12) of the Real Estate License Act and *Perl v. Patrizi,* urges us to find that a broker's failure to specify a termination date in the commission agreement precludes the broker from suing for commissions. *See* TEX. OCC.CODE § 1101.652(b)(12); *Perl v. Patrizi,* 20 S.W.3d 76, 80 (Tex.App.-Texarkana 2000, pet. denied). This section, entitled *"Grounds for Suspension or Revocation of License,"* allows the Texas Real Estate Commission to suspend or revoke a broker's license if the broker "fails to specify a definite termination date that is not subject to prior notice in a contract." TEX. OCC.CODE § 1101.652(b)(12). Based on this section, another court of appeals has held that a broker cannot enforce a commission agreement if it lacks a termination date.

*See Perl,* 20 S.W.3d at 80 (finding the failure to provide a termination date is a failure to meet a condition precedent that renders the contract unenforceable). We decline to follow *Perl* for the reasons given below.

First, section 1101.652(b)(12), the section relied on by the *Perl* court, has nothing to do with the enforceability of a broker's commission agreement. Instead, it relates solely to the suspension or revocation of a broker's real estate license. Section 1101.806, on the other hand, lists the requirements for a commission agreement in order for a broker to recover the promised commission.

Second, nothing in section 1101.652 references a broker's ability to maintain a cause of action. *See* TEX. OCC.CODE § 1101.652. As noted earlier, 1101.652 relates solely to the suspension or revocation of a broker's real estate license. *Id.* § 1101.652(b). Yet, section 1101.806 *does* state the circumstances under which a broker may maintain a cause of action. *Id.* § 1101.806. As the Texas Supreme Court has noted, "[In section 1101.806 t]he Legislature was quite explicit: a broker may not recover a commission unless the commission agreement is in writing and signed by the party to be charged." *Trammel Crow,* 944 S.W.2d at 635. In section 1101.652, we do not find the same legislative mandate. *Cf.* TEX. OCC.CODE § 1101.652(b)(1), (23) *and* § 1101.806. For these reasons, we disagree with the *Perl* court and conclude that the commission agreement between Cushman and Alliance met the statutory requirements for an enforceable commission agreement.

**Cushman was entitled to commissions on the Star lease.**

Next, Northborough claims the trial court wrongly concluded that the Equiva lease obligated Northborough to pay Cushman real estate brokerage commissions

because it assumed Alliance's agreement to pay the fees. But, the motion for summary judgment did not claim that Cushman was entitled to broker fees under the Equiva lease and the trial court did not hold that Northborough was obligated to pay Cushman broker fees based on the Equiva lease. The trial court held that Northborough was required to pay broker fees based on the original Texaco lease, which was renewed via the Star lease, and that Northborough assumed Alliance's obligations under the Texaco and Star leases—including the obligation to pay Cushman broker fees until July 31, 2004.

In our view, the real question before us is whether Cushman was still entitled to commissions under the Star lease once Northborough executed the Equiva lease. Northborough claims first that when it purchased the building, it did not expressly assume the obligation to pay Cushman broker fees on the Star lease. It then claims that, even if it did assume an obligation to pay Cushman on the Star lease, it still is not obligated to pay Cushman broker fees because the Equiva lease, being a "new arrangement" between Equiva and Alliance, replaced and superseded the Star lease. Thus, Northborough continues, because a "new arrangement" was created and because Cushman was not involved in the negotiation of that arrangement, Cushman was not entitled to recover commissions under the lease.

We find both of these arguments flawed and, as explained below, we reach two conclusions: (1) under the Star lease, Northborough explicitly assumed Alliance's obligations to pay Cushman's brokerage fees; and (2) the Equiva lease was not a new arrangement that superseded the Star lease and extinguished Northbor-

ough's obligations under it.[2] We consider first the assumption issue.

### Northborough explicitly assumed the obligation to pay commissions on the Star lease.

■ Northborough does not deny that the Star lease contains language obligating Alliance to pay Cushman's broker fees; it merely maintains that once it purchased the building from Alliance, and entered into the Equiva lease, the contract was not explicit enough to bind it to assume Alliance's obligation to pay Cushman's commissions on the Star lease. We conclude otherwise.

■ Under Texas law, a building's purchaser must expressly assume the obligation to pay a broker's commission before the purchaser can be held liable. *Regency Advantage Ltd. P'ship v. The Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (per curiam). Here, Northborough did expressly assume Alliance's obligation to pay Cushman's commissions generated by the Star lease. Two sections of the purchase agreement specifically bind Northborough. First, section 2.1(b) provides that Northborough would assume Alliance's commission obligations stated with particularity in another section of the agreement: "[Northborough] shall assume [Alliance's] obligations under the commission agreement described in Section 12.1(h) arising after the Closing Date." Section 12.1(h) provides that Northborough would be responsible only for leasing commissions owed to Cushman from the Star Lease: *"Except for the leasing commission payable to [Cushman] with respect to the Star lease,* there are no leasing commissions accrued but unpaid with respect to any Lease or which may become payable at any time prior to the Closing

---

**2.** The Equiva lease is before us only to enable us to determine if it extinguished Northbor- ough's obligations to pay commissions under the Star lease.

Date." We find this language sufficiently explicit to prove, as a matter of law, that Northborough expressly assumed Alliance's obligation to pay Cushman's commissions for the Star lease.[3]

**The Equiva lease did not supercede the Star lease, nor extinguish Northborough's obligation to pay Cushman's commissions under it.**

■ Finally, we address Northborough's assertion that the Northborough/Equiva lease agreement, which we have called the Equiva lease, was a "new arrangement" that extinguished Alliance's/Northborough's obligations under the Star lease. As proof of this, it points to the following sentence contained in the brokerage agreement Alliance executed with Cushman:

> If the tenant remains under a new arrangement, then C & W [Cushman] shall not be entitled to a commission for a period greater than the term of the original letting unless, however, C & W [Cushman] participates in the new negotiations.

This sentence, Northborough claims, holds two keys to its claimed release from obligation on the Star lease. First, seizing upon the phrase "new arrangement," which is not defined in the agreement, it points out that its lease with Equiva involved more space and different parties than the Star lease, making the Equiva lease a "new arrangement."[4] Second, it notes that Cushman did not participate in the negotiations that culminated in the Equiva lease and thus is not entitled to broker fees. By focusing on this one sentence, however, Northborough (1) ignores the remainder of the commission agreement which clarifies and narrows the "new arrangement" section, and (2) ignores one practical implication of its argument.

First, the "new arrangement" sentence is in a section entitled "Cancellation Clauses." But this record contains no evidence to suggest that the Star lease was ever cancelled. Paragraph 6 states that a lease is not cancelled "unless the tenant vacates the premises." That did not happen here; Equiva assumed Star's position in the Star

3. The cases Northborough relies upon are distinguishable. In *Lucas,* the United States District Court for the Northern District of Texas concluded that a general assumption of obligations was not specific enough to obligate the new landlord to pay the broker's commission. *Harry B. Lucas Co. v. Grand Dallas Warehouse,* No. 3:01–CV–0938–M, 2002 WL 1489504, *5 (N.D.Tex. Jul. 9, 2002) (not designated for publication). Here, Northborough specifically assumed Alliance's obligation to pay Cushman's commissions in connection with the Star lease. In *Duggan,* the Dallas court of appeals concluded that the commission agreement's express language made the broker's commission contingent on the original landlord owning the building. *Duggan v. Northpark Central VEFII, L.P.,* No. 05–98–00099–CV, 2001 WL 985144, *2 (Tex. App.-Dallas Aug. 29, 2001, no pet.) (not designated for publication). Here, there is no express language in the commission agreement that makes Cushman's commission contin-

gent upon Alliance being the building's owner nor upon Star being the building's tenant.

4. We recognize the Equiva lease contains slightly different terms than the Star lease, specifically additional space and a longer time period. Paragraph three of Cushman's commission agreement provides the following:

> Where the ultimate terms of a renewal, extension or lease of additional space do not strictly conform to the terms of the option or right in the lease, C & W [Cushman] shall not be entitled to a commission for *any period* or for *any space in excess* of that set forth in the applicable lease provisions unless, however, C & W [Cushman] participates in the new negotiations.

(emphasis added). The trial court's judgment awarded Cushman commissions only for the space and time period covered by the Star lease; no additional space or time period covered by the Equiva lease was included.

824

lease through the "Assignment and Amendment of Lease," and the premises remained occupied. In fact, at oral argument, counsel for Northborough was unwilling to say that the Star Lease was cancelled.

■ Second, even if we were to conclude that the Equiva lease somehow cancelled the Star lease, the evidence in this record points to the conclusion that the cancellation would have been by mutual agreement of the parties: representatives for Star, Equiva and Northborough each signed the document by which Star assigned the lease to Equiva, and Equiva and Northborough, the tenant and landlord, executed the "Amended and Restated Lease." According to Section 6, "[i]f the cancellation is by mutual agreement ... [Cushman] shall be paid a commission for the entire lease term." The Star lease's entire term was ten years, or until August of 2004.

In short, nothing in the lease reflects that the Star lease was cancelled. But, even if it were, this record supports the conclusion that it would have been cancelled by mutual agreement of the tenant and landlord. In that event, Cushman would have been entitled to commission payments through August of 2004.

Finally, we note that the practical result of Northborough's argument, rather than supporting Northborough's position, militates against it. The logical extension of Northborough's argument is that it could extinguish its obligation to pay Cushman merely by ignoring the current lease agreement—the Star lease—and entering into a new one with its tenant.[5] Yet, this contract was written to ensure that Cushman would receive its commissions even if

the lease was renewed or extended, even if the lease was assigned, even, in some cases, if the lease was cancelled.

As a result, we reject Northborough's contention that Cushman was not entitled to commissions because the Equiva lease was a "new arrangement." The trial court correctly concluded there was no issue of material fact. Cushman was entitled to commissions until the end of the Star lease term despite Star's assignment to Equiva and Alliance's assignment to Northborough.

### Conclusion

In conclusion, despite the lack of an express termination date in the original agreement, Cushman and Alliance entered into an enforceable commission agreement with respect to the Star lease. Further, Northborough expressly assumed, and is properly held liable for, Alliance's obligation to pay Cushman's commission for the duration of the Star lease. Finally, we have determined that the obligation to pay commissions related to the Star lease extended through its ten-year lease term. This obligation was not terminated by Star's assignment of the lease to Equiva, or by the actions of Equiva and Northborough when they entered into an Amended and Restated Lease agreement. We conclude the trial court properly denied Northborough's motion for summary judgment and properly granted Cushman's motion for summary judgment. Having found no error in the trial court's judgment, we affirm.

EDELMAN, J., concurring.

RICHARD H. EDELMAN, Justice, concurring.

Because the Texas Real Estate License Act (the "Act") provides, as a ground for

---

5. For all practical purposes, that happened in this case, for both Northborough and Equiva are successors in interest who agreed to hon-

or the obligations of their assignors; one of the obligations Northborough agreed to assume was the Star lease.

revoking a real estate license, a license holder's failure to specify a definite termination date in a contract, Northborough contends that the inclusion of such a date in a commission agreement is a statutory prerequisite to recovering a brokerage commission under the Act. Our decision in this case addresses only this specific contention and does not reach the separate issue (not asserted by Northborough) of whether a commission agreement is unenforceable as against public policy if it does not specify such a date.

In addition, preceding its revision in 1997, article 6573a, the predecessor to section 1101.652, stated as the corresponding ground for revocation, "failing to specify in a *listing contract* a definite termination date which is not subject to prior notice." Act of Sept. 1, 1991, 72nd Leg., R.S., ch. 553, 1991 Tex. Gen. Laws 1913, *repealed by* Act of June 1, 2003, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 5020 (emphasis added). In 1997, this language was expanded to "failing to specify in a listing contract *or in another contract in which the licensee agrees to perform services for which a license is required under this Act* a definite termination date which is not subject to prior notice." Act of Sept. 1, 1997, 75th Leg., R.S., ch. 839, 1997 Tex. Gen. Laws 2705, *repealed by* Act of June 1, 2003, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 5020 (emphasis added). Therefore, in 1994, when the Star lease was entered, it was not subject to the termination date requirement because it was not a listing contract.