**Opinion issued May 15, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00819-CV

———————————

**BUFFY M. LAWRENCE, Appellant**

**V.**

**THE REYNA REALTY GROUP, Appellee**

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 1003154**

---

## O P I N I O N

The Reyna Realty Group sued Buffy Lawrence to recover a broker's commission in connection with the sale of Lawrence's home. The trial court awarded Reyna Realty $14,400 in damages, $36,000 in attorney's fees, and

conditional appellate attorney's fees. Lawrence appeals, contending that: (1) Reyna Realty lacks standing to sue to recover a commission; (2) Lawrence's statute–of–frauds defense bars recovery; (3) the trial court erred in submitting questions on ratification of, and waiver of, compliance with the terms of the contract to the jury; and (4) no evidence supports the jury's findings that Lawrence waived the time for performance or that the parties subsequently agreed to a commission at closing. Because the jury reasonably could have determined that Lawrence acknowledged an extension of the parties' agreement to provide brokerage services in writing, we affirm.

## Background

In September 2010, Lawrence and Reyna Realty executed a listing agreement, under which Lawrence exclusively engaged Reyna Realty for three months to market and sell her property in exchange for a five percent commission. The agreement provided that Reyna Realty would earn two percent of the commission and would distribute the other three percent to the buyer's broker. The agreement expired December 31, 2010. The agreement included an integration clause: "This Listing is the entire agreement of the parties and may not be changed except by written agreement."

The listing agreement named "Reyna Realty Group" at a Waugh Drive address as the broker. The agreement also included the name of Mel Reyna, a

2

licensed salesperson. The listing agreement did not include a broker license number. Mel Reyna was not a licensed broker at the time. But James Hopkins, Mel Reyna's sponsoring broker, who performed the brokerage service under the agreement, was licensed and had registered "The Reyna Realty Group" as an assumed name with the Harris County Clerk. Although Hopkins had registered the name, he had not notified the Texas Real Estate Commission of his use of "The Reyna Realty Group" as an assumed name before the Lawrence sale.

After the December 31, 2010 termination date of the listing agreement, Hopkins continued to list the property on the multiple listing service, to pay for a centralized showing service, to post his sign in the property's yard, to keep a lockbox access system on the property, and to hold open houses on the property. Lawrence never objected to any of these actions. In two February 2011 emails, Lawrence approved an open house and inquired into Reyna Realty's marketing strategy at that open house. Later, Reyna Realty received an offer to purchase the property and negotiated a higher price on Lawrence's behalf.

In a February 27, 2011 Earnest Money Contract between Lawrence and the buyer, the parties listed Reyna Realty as Lawrence's broker. The contract stated that "[a]ll obligations of the payment of brokers' fees are contained in separate written agreements." Before closing, Reyna Realty also coordinated the inspections and appraisals of the property on Lawrence's behalf.

At the March 28, 2011 closing, in a Settlement Statement, Lawrence listed Reyna Realty as her broker. Lawrence, however, unilaterally reduced Reyna Realty's commission from $14,440, as contemplated in the listing agreement, to $10,000. Reyna Realty rejected Lawrence's offer to pay a $10,000 commission. The following day, Lawrence withdrew her offer and stated that she would not pay Reyna Realty a commission.

In July 2011, four months after the Lawrence closing, Hopkins notified the Commission of his use of "The Reyna Realty Group" as an assumed name. On the same day, Hopkins also notified the Commission of Reyna Realty Group's new North Loop address. The following month, the Commission resolved a complaint filed by Lawrence against Reyna and Hopkins. Although the Commission did not discipline Reyna or Hopkins, the Commission found that Hopkins had violated section 535.154(e) of the Commission rules by failing to notify the Commission of his assumed name within thirty days after he began to use it in business. *See* 22 TEX. ADMIN. CODE § 535.154(e) (2013) (Tex. Real Estate Comm'n, Gen. Provisions).

*Course of proceedings*

In October 2011, Reyna Realty sued to recover a real estate commission from Lawrence. In its petition, Reyna Realty alleged that Lawrence had listed it as her broker in the Earnest Money Contract. Reyna Realty attached the Earnest

4

Money Contract to the petition. At trial, Reyna Realty submitted questions on waiver, ratification, and whether Lawrence and Reyna Realty had agreed to a commission in the March 28, 2011 Settlement Statement.

The jury found that (1) Lawrence had waived the listing agreement's termination date; (2) Lawrence had ratified the listing agreement after its expiration by signing the Earnest Money Contract; (3) Lawrence had breached the listing agreement; (4) Lawrence had agreed to pay Reyna Realty a commission in the Settlement Statement; (5) Lawrence had breached the Settlement Statement; (6) Reyna Realty had suffered $14,400 in damages as a result of Lawrence's breaches of the listing agreement and the Settlement Statement; and (7) $36,000 plus conditional appellate fees constituted Reyna Realty's reasonable attorney's fees.

## Discussion

### I.   Standing

*Standard of review*

A party's standing to seek relief is a question of law that we review de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). Statutory construction is a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

*Analysis*

A person may not bring an action to collect compensation for an act as a real estate broker or salesperson unless the person alleges and proves that the person was a license holder at the time the act was commenced. TEX. OCC. CODE ANN. § 1101.806(b)(1) (West 2012). Texas courts have consistently required strict compliance with the Real Estate License Act if a real estate broker or salesperson seeks a judicial recovery of fees. *Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 676 (Tex. 1979). The purpose of the statute is to eliminate or reduce fraud that might be occasioned on the public by unlicensed, unscrupulous, or unqualified persons. *Id.* at 675–76.

The September 2010 listing agreement names "The Reyna Realty Group" at a Waugh Drive address as the broker. Mel Reyna was not a licensed broker at the time, but Hopkins, who held himself out as "The Reyna Realty Group" in the Harris County records, was.

Lawrence relies on *Miller* to contend that the Real Estate License Act bars Reyna Realty's recovery. In *Miller*, a company that was not licensed sought to recover a real estate commission. 585 S.W.2d at 678. Its employee, however, the person who actually performed the brokerage services, was a licensed broker. *Id.* The Texas Supreme Court held that the company could not recover the commission because the broker had listed its name, rather than its employee's

6

name, as the broker in the contract, and the company did not hold a broker's license. *Id.*

*Miller* does not bar Reyna Realty's recovery in this case, because "The Reyna Realty Group" is Hopkins' assumed name, and he provided the brokerage services. Reyna Realty's proffered filing of an assumed name certificate is presumptive evidence that Hopkins was doing business as "The Reyna Realty Group" at the time of the agreement; thus, he was listed as a broker. *See* TEX. BUS. & COM. CODE ANN. § 71.154(b)(1) (West 2009).

Relying on *Boyert v. Tauber*, Lawrence further contends that Reyna Realty cannot use parol evidence to substitute Hopkins' name as broker in the listing agreement, because naming a broker is an essential element of a real estate sales contract. *See* 834 S.W.2d 60, 62–63 (Tex. 1992). *Boyert*, like *Miller*, is distinguishable. There, a real estate sales contract stated that a real estate commission was to be paid to "outside brokers." *Id.* at 63. The Texas Supreme Court held that the term "outside brokers" did not "narrow the universe of potential brokers"; the name of a particular broker was supplied entirely by parol evidence. *See id.* In contrast, the term "The Reyna Realty Group" narrowed the universe of potential brokers to Hopkins, because Hopkins had registered "The Reyna Realty Group" as his assumed name with the Harris County Clerk. The listing agreement thus furnished within itself "the means and data" to identify Hopkins as broker

7

with reasonable certainty. *See id.* Because the listing agreement sufficiently identifies Hopkins as a broker, we hold that Reyna Realty has standing to recover a commission. *See* TEX. OCC. CODE ANN. § 1101.806(b)(1).

Hopkins' late notification to the Real Estate Commission does not change the outcome. Not every violation of the Real Estate License Act will bar a broker's recovery of a commission. *Northborough Corp. Ltd. P'ship, L.L.P. v. Cushman & Wakefield of Tex., Inc.*, 162 S.W.3d 816, 821 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In *Northborough*, our sister court held that a violation of section 1101.652 did not preclude a broker from recovering a commission, because that section makes no reference to a broker's ability to maintain a cause of action. *Id.* Similarly, here, neither section 1101.552 of the Occupations Code nor section 535.154(e) of the Commission rules refers to a broker's ability to maintain a cause of action. *See* TEX. OCC. CODE ANN. § 1101.552(a), (c); 22 TEX. ADMIN. CODE § 535.154(e).

## II.   Statute of frauds

*Standard of review*

We review a trial court's construction of an unambiguous contract de novo. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v.*

*Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). We consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Id.* Contract terms will be given their plain, ordinary, and generally accepted meanings, unless the contract indicates a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

*Analysis*

A person may not recover a commission for the sale or purchase of real estate unless the agreement on which the action is based is in writing and signed by the party against whom the action is brought. TEX. OCC. CODE ANN. § 1101.806(c). Lawrence raised a statute–of–frauds defense in her motions for a direct verdict and for a new trial. Generally, if a contract falls within the statute of frauds, then a party cannot enforce any subsequent oral material modification to the contract. *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967)). Parties, however, may orally agree to extend the time of performance so long as they make the agreement before the expiration of the written contract. *Dracopoulas*, 411 S.W.2d at 721.

Reyna conceded that, at their initial meeting, Lawrence stated that she wanted only a three–month listing. No evidence indicates that, before December

31, 2010, the parties agreed to extend the termination date. We hold that the termination date was a term that affected other rights and duties in the contract and was material to the agreement. *See id.*; *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530–31 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Additionally, the listing agreement includes an integration clause: "This Listing is the entire agreement of the parties and may not be changed except by written agreement." Such language negates "the apparent authority of an agent to vary orally the written terms" of the agreement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 216 cmt. e (1981)). Applying the statute of frauds, we hold that any oral modification to the termination date after the agreement expired is unenforceable. *See Meritage Homes*, 334 S.W.3d at 282.

Here, however, the record contains confirmation of an extension acknowledged in writing by Lawrence. In the Earnest Money Contract signed by Lawrence two months after the December 31, 2010 termination date of the listing agreement, the parties listed Reyna Realty as Lawrence's broker. Similarly, in the March 28, 2011 Settlement Statement signed by Lawrence at the closing following the sale of her home, Lawrence listed Reyna Realty as her broker. Because Lawrence acknowledged in writing a continuation of the listing agreement under which Reyna Realty performed, we hold that the integration clause and Lawrence's

10

statute–of–frauds defense did not bar the jury's consideration of whether the listing agreement between the parties remained, subject to a modification of its duration or ratification of work done post–termination.

## III. Jury charge

*Standard of review*

Lawrence contends that the trial court erred in submitting jury questions on Reyna Realty's ratification and waiver defenses. We review a challenge to the trial court's submission of jury questions for an abuse of discretion. *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Id.* Generally, charge error requires reversal of the judgment when it probably caused the rendition of an improper verdict. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 225 (Tex. 2010) (citing TEX. R. APP. P. 61.1).

*Analysis*

The jury found that Lawrence ratified the listing agreement by signing the Earnest Money Contract. Ratification occurs when a person who knows all the material facts confirms or adopts a prior act that did not then legally bind him and which he could have repudiated. *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). The

elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of a prior act; and (3) with the intention of giving validity to the prior act. *Id.* (citing *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

Lawrence contends that Reyna Realty waived the issue of ratification because it failed to plead ratification and Lawrence did not try this issue by consent. *See RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("If an affirmative defense is not plead or tried by consent, it is waived.").

In the absence of a special exception, we construe a petition liberally in favor of the pleader. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). Texas is a notice pleading jurisdiction; a petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013) (citing *Roark*, 633 S.W.2d at 810). The test of fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and basic issues of the controversy and the testimony that is probably relevant. *Marin v. IESI TX Corp.*, 317 S.W.3d 314, 332 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

In its petition, Reyna Realty alleged that Lawrence had listed it as her broker in the February 27, 2011 Earnest Money Contract executed by Lawrence and the buyer upon the sale of her home. Reyna Realty attached a copy of the Earnest Money Contract to the petition. At the jury conference, Reyna Realty's counsel stated that it had sent Lawrence a proposed jury instruction that included the ratification question three months before trial. The parties introduced the Earnest Money Contract into evidence at trial and the jury heard testimony about Lawrence's execution of it and Reyna Realty's performance of its obligations under the listing agreement well after the listing agreement's December 31, 2010 termination date. We hold that the trial court did not abuse its discretion in submitting a question on ratification to the jury, because Reyna Realty gave Lawrence fair notice of its ratification claim.[1]

## Conclusion

Because Lawrence ratified the listing agreement after its expiration by signing the Earnest Money Contract and by accepting the benefit of Reyna Realty's performance under the listing agreement, we hold that Lawrence's

---

[1] Because ratification provides an independent ground to uphold the trial court's award, we need not address Lawrence's challenge to the sufficiency of the evidence supporting the jury's findings that Lawrence waived enforcement of the termination clause in the listing agreement or that the parties agreed to a commission in the Settlement Statement at closing. *See Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

13

statute–of–frauds defense did not bar Reyna Realty's recovery of damages and attorney's fees. Accordingly, we affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.