**Opinion issued February 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00270-CV

_____

**ITHACA INVESTMENTS, LTD., Appellant**

**V.**

**USRC CENTRAL TEXAS, LTD. AND BOB ALLEN EHL, Appellees**

---

**On Appeal from the 285th District Court**
**Bexar County, Texas**
**Trial Court Case No. 2012-CI-06699**

---

## MEMORANDUM OPINION

This appeal involves a dispute between a landlord and its tenant about whether the tenant effectively exercised its option to renew a commercial lease.[1]

---

[1] On March 31, 2014, the Texas Supreme Court ordered this appeal transferred from the Court of Appeals for the Fourth District of Texas. *See* TEX. GOV'T CODE

The landlord, Ithaca Investments, Ltd., sued for a declaration that the lease had terminated. The tenant, Bob Ehl, countersued for a declaration in his favor that he had effectively renewed the lease upon sending letters to Ithaca in February 2011 and February 2012.

After a bench trial, the trial court declared, under either letter, that Ehl had effectively exercised the five-year renewal option and thus the lease remained in effect. It found that the first letter effectively invoked the renewal option and, alternatively, that equitable reasons excused Ehl's lack of strict compliance in the second letter's attempt to exercise it. Ithaca appeals, challenging the trial court's interpretation of the option contract. We affirm.

**Background**

In November 2000, Ithaca and Ehl entered into a lease in which Ithaca agreed to rent a commercial property to Ehl for a period of ten years. Ehl invested about $2.7 million to build out and equip the leased premises for the purpose of operating a renal care company. In 2006, Ehl sold his company to the predecessor of what is now USRC Central Texas, Ltd. With Ithaca's permission, Ehl subleased the property to USRC. Ehl and USRC agreed that USRC would pay an above-market premium on its rental payments to Ehl to finance part of the purchase price.

---

ANN. § 73.001 (West 2013) (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Fourth District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

The lease term began July 21, 2002 and ended July 20, 2012, and provided the option to extend the term for an additional five years. The lease's renewal provision, in its entirety, provides:

> Tenant is granted the option(s) to extend the term of this lease for two (2) consecutive extended term(s) of
>
> five (5) years each, provided (a) Tenant is not in default at the time of exercise of the respective option, and (b)
>
> Tenant gives written notice of its exercise of the respective option at least one hundred eighty (180) days prior to the expiration of the original term or the expiration of the then existing term. Each extension term shall be upon the same terms, conditions and rentals except (i) Tenant shall have no further right of renewal after the last of the extension terms prescribed above, and (ii) the monthly minimum guaranteed rental shall be a[s] follows:
>
> OPTION ONE: Years 11 through 15 $7.75 per square foot per year
>
> OPTION TWO: Years 16 through 20 $8.60 per square foot per month.

The 180th day before expiration of the original term was January 22, 2012.

The lease also provides that it contains the "entire agreement between the parties" and that any modification had to be in writing and signed by the party against whom any modification was sought. It further provides that Ithaca's agents would not have any authority, unless authorized in writing executed by Ithaca, to: "(a) make exceptions, changes or amendments to [the lease] or factual representations not expressly contained in [the Lease], (b) waive any right,

3

requirement, or provision of [the lease], or (c) release Ehl from all or part of [the lease]."

In early 2011, Edward Tatum, Ithaca's Chief Financial Officer, called Ehl and told him that it was time to renew his lease. During their conversation, Tatum told Ehl that the rent for the renewal term would be $5,626.25 per month, with payment at that rate to begin immediately. That amount was higher than the amount Ehl had been paying for the lease term in effect at the time, but was slightly lower than the renewal rate stated in the lease. Ehl accepted Tatum's price. He explained that if [Ithaca] had "said $6,000 a month rather than $5,625.25, [he] would have paid that, too": he needed the renewal to preserve his financing arrangement with subtenant USRC.

On February 2, 2011, Ehl sent a letter to Tatum to confirm his understanding of their telephone conversation, specifically, that "the now in effect monthly rental will be five thousand six hundred twenty-six dollars and twenty-five cents ($5,626.25) for the next six year term of the Lease." Shortly thereafter, Ehl received a letter from Ithaca and signed by Tatum that specifically referred to Tatum's "previous conversation" with Ehl and confirmed the monthly rent rate stated in Ehl's letter, as well as Ithaca's receipt of Ehl's check for that amount. The lease provides that Ehl's notice was effective when Ithaca received it.

In July 2011, Ithaca realized that it had not transferred the water utility account for the rental space to Ehl when he had assumed the lease nine years before, even though the lease provided that the tenant would pay the utilities. Ithaca then transferred the water account and sent a letter to Ehl notifying him that he owed $47,405.87 for water charges incurred since February 2002. Ithaca asked Ehl to "cure the default amount" within ten days.

Ehl responded to the demand in late August. Through counsel, he offered to pay $20,055.40—for water charges incurred within the four-year limitations period—as well as offsets for his overpayments of the base rent to satisfy the default, which amounted to approximately $34,000. Ithaca did not respond to counsel's letter.

In December 2011, Ithaca received a $34,000 payment directly from Ehl's subtenant, USRC, for the water charges. Ithaca did not inform Ehl about the payment. In February 2012, Ehl learned that Ithaca planned to oust him from the property and had arranged for USRC to lease it directly from Ithaca. This information prompted Ehl to send Ithaca a letter by certified mail that read:

> Consider this letter as my written confirmation, that I will exercise the option to renew the Lease for the property located at 7101 Highway 90 West, Suite 101, 78227 under the same terms and conditions as the original Lease.

The written confirmation complied with the lease's renewal option provision's requirement that it be sent by certified mail, but it was sent after the deadline for its exercise.

By time of trial, Ithaca and Ehl sought opposing declarations regarding the lease: Ithaca claimed that the lease terminated on July 21, 2012 and was not timely renewed by Ehl. For his part, Ehl sought a declaration that he timely renewed the lease and it was effective through July 2017.[2]

The trial court denied Ithaca's request for declaratory relief and granted Ehl's. It found that Ehl's February 2011 letter to Tatum effectively renewed Ehl's lease. As an alternate basis for its judgment, the trial court also found that equitable principles excused Ehl's failure to strictly comply with the 180-day notice requirement with respect to the February 2012 letter, and that, as a result, that letter effectively renewed the lease.

## Discussion

### I.    Standard of review

Ithaca contends that the evidence does not support the trial court's finding that Ehl effectively exercised the lease renewal option. In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—

---

[2]    USRC interpleaded the funds it owed for subleasing the property.

6

Houston [1st Dist.] 2005, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *HTS Servs.*, 190 S.W.3d at 111. When a trial court enters findings of fact and conclusions of law, we "indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In a legal-sufficiency review, we view the evidence in the light most favorable to the fact-finding, credit favorable evidence if a reasonable fact-finder could do so, and disregard contrary evidence unless a reasonable fact-finder could not. *See id.* at 827. "[F]indings of fact bind an appellate court only if the findings are supported by evidence of probative force." *Thomas v. Casale*, 924 S.W.2d 433, 437 (Tex. App.—Fort Worth 1996, writ denied). In a factual sufficiency review, we view all of the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that

7

the finding is clearly wrong and unjust. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review de novo a trial court's conclusions of law. *Merry Homes, Inc. v. Chi Hung Luu,* 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If we determine that the trial court made an erroneous conclusion of law, we will not reverse unless it resulted in an improper judgment. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

## II. Option contracts

*Applicable law*

Option contracts have two components: (1) an underlying contract that is not binding until it is accepted; and (2) a covenant to hold open the opportunity to accept. *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A party to an option contract may enforce that option only by strict compliance with the terms of the option. *See Zeidman v. Davis*, 342 S.W.2d 555, 558 (Tex. 1961). "[A] failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection." *Comeaux*, 93 S.W.3d at 220.

8

As with other sorts of contracts, we review a trial court's construction of an unambiguous option contract de novo. *See MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex. 1999). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006). We consider the entire writing in order to harmonize and give effect to all of the contract's provisions so that none will be rendered meaningless. *Id.* Contract terms will be given their plain, ordinary, and generally accepted meanings, unless the contract indicates a technical or different sense. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005). We also look to the text "as understood in light of the facts and circumstances surrounding the contract's execution." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.,* 352 S.W.3d 462, 469 (Tex. 2011).

Under the statute of frauds, material modifications to a lease agreement must be in writing and signed by the party against whom the modification is to be enforced. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5) (West 2014); *Lawrence v. Reyna Realty Group*, 434 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.) (citing *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.)); *see also Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room*, 8

S.W.3d 18, 21 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (finding that written agreement would have to exist for party to be obligated to pay relocation expenses in exchange for early surrender of lease).

*Analysis*

We examine the option provision and the February correspondence to determine whether the trial court reasonably could have concluded that Ehl's February 2011 letter conveyed Ehl's acceptance of the option to renew the lease. In arguing against that conclusion, Ithaca observes that the February 2011 letter does not contain the term "renewal" and refers to materially different terms, including a different rental rate and an incorrect length of time for the renewal term. Ithaca also points out that the lease prohibits any oral modification of its terms without Ithaca's written consent.

Ithaca's arguments are unavailing. First, the lease agreement does not require the tenant to use any specific language to invoke the renewal option. Thus, the absence of the word "renewal" from Ehl's letter is not fatal to his claim. Second, with respect to the monthly rental rate and term, the parties agreed to the modifications in writing. When Tatum approached Ehl about exercising the option, he also asked Ehl to increase the amount of his monthly rental payments beginning in February 2011, to a rate lower than the option indicated. Ehl and Ithaca then signed letters confirming their agreement to the new amount. Because

both parties accepted a modified rental price in writing, and Ithaca accepted Ehl's rental payments in the amount that Ithaca had proposed and confirmed as correct, the rental price modification does not render ineffective Ehl's exercise of the lease renewal option. The evidence of the surrounding circumstances similarly resolves the variance between the renewal option's five-year term and Ehl's reference to a "six year term" in his February 2011 letter. Tatum had asked Ehl to renew the lease nearly a year-and-a-half early; Ehl's use of "six year term" conveys his understanding that his obligation to pay the new rent amount that Ithaca wanted would begin immediately—in other words, roughly a year before the five-year renewal term would begin—and continue through that term. *See Houston Exploration Co.,* 352 S.W.3d at 469.

Ithaca further responds that the trial court could not rely on a modified contract as the basis for its finding because Ehl failed to plead modification as an affirmative defense. Ehl answers that the parties tried the issue by consent, making it a proper basis for the trial court's judgment. *See* TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

To determine whether the parties tried an issue by consent, we review the record for evidence of trial of the issue. *Guillory v. Boykins*, 442 S.W.3d 682, 690

(Tex. App.—Houston [1st Dist.] 2014, no pet.); *see Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied) ("A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party failed to make an appropriate complaint.").

Ehl's contention that the correspondence containing the modified terms constituted a valid notice of his intent to exercise the five-year renewal option formed the cornerstone of his presentation at trial. In cross-examining Ehl, Ithaca confronted him with provisions of the written lease agreement concerning Tatum's authority to propose and agree to different lease terms and whether Tatum, as opposed to Ehl, could properly invoke the renewal option. Ithaca's questions related directly to the validity of the modification memorialized in the parties' correspondence. The record supports the conclusion that the parties tried the modification issue by consent. Based on the evidence presented, we hold that the trial court properly concluded that Ehl exercised the lease's renewal option, as modified in the written agreement of both parties, in February 2011.

As a result of our holding, we need not consider whether the trial court's findings and conclusions pertaining to Ehl's February 2012 letter and whether Ehl was in default on the lease when he sent that letter provide an alternate basis for

supporting the judgment.   To the extent Ithaca challenges the trial court's conclusions that its claim against Ehl for unpaid water bills is barred equitably and by the statute of limitations as issues independent of its claim of default, we find no basis to disturb them.  The record contains sufficient evidence supporting those conclusions, and Ithaca failed to demonstrate unequivocally that Ehl, as guarantor, was obligated to pay any remaining amount after USRC made its payment.

## Conclusion

We affirm the judgment of the trial court.


Jane Bland
Justice


Panel consists of Chief Justice Radack and Justices Bland and Huddle.