# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## BEFORE THE COURT EN BANC

## NO. 03-20-00058-CV

**Appellant, Christopher F. Bertucci, as Executor of The Estate of Anthony R. Bertucci, Deceased, and derivatively on behalf of American Affordable Homes & Properties, Inc.; American Affordable Homes, LP; Town Vista Development, LLC; Town Vista Terrace, Inc.; and MidCrowne Senior SLP, LLC // Cross-Appellant, Eugene L. Watkins, Jr.**

**v.**

**Appellee, Eugene L. Watkins, Jr. // Cross-Appellee, Christopher F. Bertucci, as Executor of The Estate of Anthony R. Bertucci, Deceased, and derivatively on behalf of American Affordable Homes & Properties, Inc.; American Affordable Homes, LP; Town Vista Development, LLC; Town Vista Terrace, Inc.; and MidCrowne Senior SLP, LLC**

---

## FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
## NO. C-1-PB-17-000937, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Christopher Bertucci, as Executor of The Estate of Anthony R. Bertucci, Deceased, and derivatively on behalf of American Affordable Homes & Properties, Inc.; American Affordable Homes, LP; Town Vista Development, LLC; Town Vista Terrace, Inc.; and MidCrowne Senior SLP, LLC, filed a notice of appeal from the trial court's summary judgment favoring appellee Eugene L. Watkins. We will affirm the judgment in part, reverse the judgment in part, and remand this cause for further proceedings.

# BACKGROUND[1]

This cause arises from a dispute between two parties—Anthony Bertucci (Anthony[2]) and Eugene Watkins (Watkins), who formed, funded, and ran business entities created to develop low-income housing projects. These businesses— "the B-W Companies"— were American Affordable Homes & Properties, Inc. (AAH); American Affordable Homes, LP (AAHLP); MidCrowne Senior SLP, LLC (SLP); Town Vista Development (TVD); Town Vista Terrace, Inc. (TVT); and Town Vista, LP (TVLP). AAH was the general partner of AAHLP and co-developed the MidCrowne project. TVT is the general partner of TVLP, the owner of the Towne Vista project, which TVD developed. No formal business entity encompasses all of the B-W Companies. In forming the B-W Companies, Anthony and Watkins generally accorded Anthony a sixty-percent interest and Watkins a forty-percent interest with Anthony generally supplying the money and Watkins providing expertise concerning low-income housing tax credits and managing the financial aspects of the individual businesses for "sweat equity."

Apart from the B-W Companies, Watkins and his wife were limited partners in Texas Community Builders, LP (TCB). Allegedly with Anthony's knowledge and agreement, Watkins used a bank account controlled by TCB to deposit income and pay expenses of the B-W Companies. Watkins also used the bank account for personal transactions, which he said Anthony knew. Watkins testified that he and Anthony regularly went over the B-W Companies' transactions as discussed further below.

---

[1] This Background section is drawn from the pleadings and evidence in the record before this Court. Except as final judgment is rendered on any particular claim, the descriptions herein are not binding fact findings but provide general context for the discussions that follow.

[2] We refer to Anthony Bertucci as "Anthony" to distinguish references to him from references to appellant Christopher Bertucci.

When Anthony's health declined his children began familiarizing themselves with Anthony's interests; in 2014, Anthony's son Christopher Bertucci (Christopher or Executor) accessed a storage unit that contained records for the B-W Companies and requested documentation from Watkins to explain this aspect of Anthony's finances. When real estate owned by one of the B-W Companies in 2015 was sold, Christopher, through his attorney, requested information and an accounting for the finances of all of the B-W Companies that would include information about the TCB account used for transactions involving the B-W Companies. Christopher's attorney proposed that the proceeds of the property sale be held in escrow pending the sharing of financial information. In 2016, the escrow holder interpleaded and deposited the proceeds from the property sale with the court; Watkins then filed a claim for distribution of the funds and Anthony, through Christopher exercising his power of attorney, filed a counterclaim. The parties also filed derivative claims on behalf of other parties and amended their claims to involve other parties. When Anthony died in March 2017, Christopher took his place in the lawsuit as Executor of Anthony's estate, and this lawsuit was transferred to the probate court.

In his Sixth Amended Counterclaim, Christopher filed claims as Executor on behalf of the Estate and derivatively on behalf of the B-W Companies. The claims include theft liability by Watkins regarding money belonging to Anthony and to the B-W Companies, breach of Watkins's fiduciary duty to Anthony and the B-W Companies, breach of the duty to account to the Estate regarding funds furnished to him by Anthony, and breach of alleged contractual commitments to administer and account for the B-W Companies' financial affairs.

The parties filed motions for summary judgment. Executor filed motions for partial summary judgment on his claims that Watkins owed a fiduciary duty and a duty to

account and that he breached those duties. Watkins filed both a no-evidence and a traditional motion for summary judgment. In the no-evidence motion, Watkins sought judgment on Executor's counterclaims, alleging that Executor had no evidence to support the claims. In his traditional motion, Watkins sought judgment on his defenses, including his theories that (1) the Executor's claims were barred by statutes of limitations that were not tolled by the discovery rule or fraudulent concealment, (2) that Watkins's counterclaims were not related to the pre-existing claims in the suit and so any limitations bar was not temporarily lifted under section 16.069 of the Texas Civil Practice and Remedies Code, and (3) that Anthony waived or ratified the disputed transactions.

The trial court overruled Executor's motion to exclude a report by Gary McIntosh, an auditor appointed by the trial court to determine "whether the funds invested by the parties have been substantially accounted for by the parties." McIntosh filed a report, then sought to withdraw that report and substitute an amended one because of purported errors and incomplete underlying documentation. The probate court rejected the amended report and declared the original report "conclusive as to the accounts stated therein."

In December 2019, the trial court granted Watkins's motions for summary judgment and denied Executor's motions for summary judgment and overruled his objections under the Dead Man's Rule (Texas Rule of Evidence 601(b)) to the admission of evidence regarding Anthony's oral statements. The trial court severed the claims for attorney's fees on the Texas Theft Liability Act (TTLA) and breach-of-contract claims along with Watkins's claims against the B-W Companies for breach of contract, equitable restitution or unjust enrichment, declaratory relief, and attorney's fees, and transferred those claims to the district court.

4

Christopher filed a notice of appeal as executor of the estate of Anthony R. Bertucci, deceased, and derivatively on behalf of the B-W Companies. Watkins filed a cross-appeal challenging the severance and transfer of the attorney's fees claims.

## ISSUES ON APPEAL[3]

On appeal, Executor challenges the trial court's admission of McIntosh's report as an auditor's report, decisions to deem it conclusive, and consideration of it as an expert opinion. He contests the overruling of his objections to Watkins's summary-judgment evidence made under the Dead Man's Rule, *see* Tex. R. Evid. 601(b). He also challenges the trial court's denial of his motions for summary judgment and its grant of Watkins's motions for summary judgment.

In response, Watkins contends that the judgment on Executor's derivative claims on behalf of the B-W Companies must be affirmed because Executor did not file a brief in that capacity or address the derivative claims. Watkins further argues that the trial court properly overruled Executor's objections to McIntosh's auditor's report and contends that any error in its admission would have been harmless because Watkins's motions for summary judgment did not rely on the report. Watkins further contends that the trial court properly granted his no-evidence motion for summary judgment; that Executor complains of TCB's acts or omissions, not his; and that no evidence indicated that Watkins unlawfully appropriated any property to which Anthony had a possessory right. Watkins also argues that the trial court properly granted his traditional

---

[3] Watkins also originally raised a cross-appeal about attorney's fees. By opinion and order dated August 13, 2022, this Court abated and remanded the attorney's fees issues for resolution in the trial court consistent with the parties' agreement. *See generally Bertucci v. Watkins*, No. 03-20-00058-CV, 2022 WL 3328986 (Tex. App.—Austin, Aug. 12, 2022, order) (en banc). After the trial court entered an order regarding the resolution of the attorney's fees issue, this Court reinstated this appeal. No attorney's fees issue remains for this Court to resolve.

motion for summary judgment because limitations had run on Executor's claim. He alternatively contends that Anthony and Watkins executed ratifications and that Executor did not specially except to Watkins's defense of waiver and ratification. Watkins also contends that the trial court properly overruled Executor's objection under the Dead Man's Rule.

## DISCUSSION

Before addressing the substantive issues raised by this appeal concerning the parties' motions for summary judgment, we must consider which parties in what capacities and which arguments are properly before this Court.

## I.     Judgment concerning Executor's derivative claims on behalf of the B-W Companies

Watkins contends Executor waived his challenges to the trial court's disposition of his derivative claims by failing to brief this Court on those challenges in accordance with Texas Rule of Appellate Procedure 38.1. We agree. Failure to provide argument and analysis in support of an appeal can result in waiver. *RSL Funding, LLC v. Newsome,* 569 S.W.3d 116, 126 (Tex. 2018). Here, the trial court pleadings and notice of appeal show that Anthony was not identical to the B-W Companies, but the brief on appeal does not make this distinction and does not include argument concerning the derivative claims.

Executor's Sixth Amended Counterclaim lists him as the executor of Anthony's Estate who brought claims on behalf of the Estate and derivatively on behalf of the companies:

> Defendant/Counterclaimant/Third-Party Plaintiff Christopher F. Bertucci ("*Executor*"), as executor of the estate (the "*Estate*") of Anthony R. Bertucci, deceased ("*Bertucci*"), files this Sixth Amended Counterclaim against Plaintiff. The claims herein are maintained on behalf of the Estate (which includes the entire community property interest of Bertucci and his widow in the causes of action), and derivatively on behalf of [the B-W Companies].

6

Though Executor brought both sets of claims, the claims are distinct because claims of the Estate are Anthony's individual claims, while the derivative claims are the claims of the B-W Companies—not Anthony (or his Estate) directly. *See Pike v. Texas EMC Mgmt.*, 610 S.W.3d 763, 776 (Tex. 2020); *Shurberg v. La Salle Indus. Ltd.*, No. 04-15-00320-CV, 2016 WL 1128291, at *6 (Tex. App.—San Antonio Mar. 23, 2016, no pet.) (mem. op.). When introducing his motion for partial summary judgment, Executor noted that he had "asserted claims against Eugene L. Watkins, Jr. ('Watkins') on behalf of the Estate and derivatively on behalf of certain companies that Bertucci and Watkins formed (the 'B-W Companies')." In summary-judgment-related filings, Watkins distinguished between claims brought on behalf of the Estate and those brought derivatively on behalf of the B-W Companies. For example, in his response to Executor's objections to his summary-judgment evidence, Watkins argued that Executor did not have standing as Executor to bring claims for harm done to the B-W Companies but must instead bring those claims derivatively on behalf of those entities, citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). In his no-evidence motion for summary judgment, Watkins asserted that Executor had no evidence "that Watkins intended to deprive *the Decedent* **or** *the Entities* of their property, or that *the Entities* **or** *Decedent* did not effectively consent" to the disputed expenditures. (Emphases added.)

When initiating this appeal, Executor maintained the distinction in his capacities. He filed the notice of appeal "as executor of the estate of Anthony R. Bertucci, deceased, and derivatively on behalf of (i) American Affordable Homes & Properties, Inc., (ii) American Affordable Homes, LP, (iii) Town Vista Development, LLC, (iv) Town Vista Terrace, Inc., and (v) MidCrowne Senior SLP, LLC."

However, on the cover page of Appellants' Brief, Christopher listed only his executor capacity and did not list a derivative capacity or the B-W Companies, captioning the brief as follows: "Christopher F. Bertucci, Executor, Estate of Anthony R. Bertucci, Appellants v. Eugene L. Watkins, Jr., Appellee." In the Identity of Parties and Counsel section of his brief, Executor lists only "Appellants: Christopher R. Bertucci, Executor, Estate of Anthony R. Bertucci." *See* Tex. R. App. P. 38.1(a) ("*Identity of Parties and Counsel*. The brief must give a complete list of all parties to the trial court's judgment or order appealed from . . . .").

In his appellee's brief, Watkins raises the issue: "Whether the unchallenged judgment dismissing all derivative claims must be affirmed, where Executor did not file a brief in a derivative capacity for any Company." Watkins argues, "By filing his Brief identifying his Executor capacity as the *only* appellant, [Executor] deliberately pursues his appeal only on the claims [Anthony] could pursue personally, for the benefit of the Estate; he does not pursue claims for the benefit of the [B-W] Companies."

In his reply brief, Executor argues that this Court should liberally construe his opening brief so that his right to appellate review of the judgment on the derivative claims is not lost by waiver. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221-22 (Tex. 2017). He notes, "The Brief refers to 'Appellants' 51 times" and "is signed by counsel for Appellants" and "discusses each derivative claim and the leading cases," citing three different pages of the opening brief. The use of the word "Appellants" is consistent with his use of the word "Appellants" on the cover page and the "Identity of Parties" section—both of which mention his status as executor of Anthony's Estate and neither of which mention the derivative status or claims. The first cited page is Executor's response to Watkins's argument "that the Dead Man's Rule does not apply because Bertucci asserted derivative claims for the B-W

8

Companies."  Executor argued that the rule should apply because Anthony had asserted individual claims and "had standing to assert his derivative claims"; this passage does not, however, show that Executor is raising appellate issues regarding the derivative claims.  On the second cited page, Executor cites cases that discuss derivative claims, but he cites them only for the proposition that Watkins was a fiduciary through his status within various B-W Companies.  Executor argues that Watkins owed him a fiduciary duty by virtue of his status within the B-W Companies—an argument that is consistent with Watkins having a fiduciary duty to Anthony as seen below.  On the third cited page, Executor asserts that, because the law generally affords a remedy for a corporate officer's breach of fiduciary duty to a company, an exculpatory clause is against public policy; that argument is not so plainly a derivative claim that it implies that Christopher is making it as a derivative claim.  The absence of arguments specific to the derivative claims constitutes waiver of the appeal of those derivative claims.  *See* Tex. R. 38.1(i); *RSL Funding,* 569 S.W.3d at 126.

Executor also argues that Watkins "could have corrected the inadvertent omission," but it is neither appellee's responsibility nor his role to decide which appellate challenges an appellant is pursuing against a trial court's judgment or in what capacity and whether any apparent omission is intentional or inadvertent.  Although Executor argues in his reply brief that Watkins owed fiduciary duties to the companies in addition to duties Watkins owed duties to Anthony, new issues are waived if raised only in the reply brief.  *See McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *5 n.11 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.).

A person appealing in his individual capacity is distinct from the same person appealing in his representative capacity.  *See Elizondo v. Texas Nat. Res. Conservation Comm'n*,

9

974 S.W.2d 928, 931 (Tex. App.—Austin 1998, no pet.). This Court has held that an appellant waived a challenge to a judgment favoring an adverse party when the appellant failed to name the party as an appellee on the cover of its appellant's brief, name the party as an appellee in its list of parties and counsel in its appellant's brief, list the party as an appellee in its docketing statement, or serve the party with copies of any of its filings in this Court. *Pante Tech. Corp. v. Austin Concrete Sols., Inc.*, No. 03-10-00059-CV, 2010 WL 3927598, at *8 (Tex. App.—Austin Oct. 7, 2010, no pet.) (mem. op.). While in this case, Executor was appellant in a different capacity, the principle still applies. Parties not named in a brief have not filed a brief, and arguments and claims not presented on their behalf are not before the appellate court. Accordingly, we do not reach issues concerning the judgment on the claims brought by Executor as derivative claims on behalf of the B-W Companies.[4]

## II.     Judgment on the Executor's claims on behalf of the Estate

A person appointed as executor of a person's estate steps into the place of the deceased regarding the deceased's claims. *Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009). Executor contends that the trial court erred by granting summary judgment favoring Watkins on Executor's claims for breach of contract, civil theft, and breach of fiduciary duty, including the duty to account.

### A.     Executor's partial summary-judgment motions

This Court cannot address the full extent of the trial court's denial of Executor's motions for partial summary judgment in this appeal. Generally, when opposing parties file

---

[4] We need not and do not address any issues related to a claim that Executor was not entitled to maintain claims in a derivative capacity at the trial court.

10

cross-motions for summary judgment and the trial court grants one motion and denies the other, the appellate court can determine all questions presented in the motions and render the judgment the trial court should have rendered. *Lancer Ins. v. Garcia Holiday Tours*, 345 S.W.3d 50, 59 (Tex. 2011). But before we can reverse summary judgment for one party and render judgment for the other, both parties must have sought final-judgment relief by their motion for summary judgment. *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998). Executor did not seek final judgment by his motion for summary judgment. We can nevertheless consider issues in cross-motions for partial summary judgment that overlap with issues raised in the opposing party's motion for final summary judgment. *See Federal Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611-12 (Tex. 2012).

Executor's cross-motions for partial summary judgment expressly limited their scope. In his first motion, Executor requested judgment that:

(i)    as the manager of the business operations and accounting manager for the B-W Companies, Watkins was a fiduciary during the Relevant Period;

(ii)   Watkins has a duty to account for the B-W Funds that came into in his possession;

(iii)  Watkins commingled the B-W Funds with other funds in his TCB account; and

(iv)   the commingling shifts to Watkins the burden to prove that his use of the B-W Funds was legitimate and complied in all respects with his fiduciary duty.

Executor expressly "reserved for ultimate determination by the Court (or the jury) whether Watkins has succeeded in proving compliance with his obligations." In his second motion for partial summary judgment, Executor requested judgment that Watkins had inappropriately used Anthony's funds (including Anthony's share of Project funds) and had not provided an adequate

11

accounting. He requested that the trial court reserve judgment as to the appropriate remedy to be granted Executor "on behalf of [Anthony's] estate."

We will consider these issues from Executor's motions only to the extent that they overlap with our review of the trial court's orders on Watkins's no-evidence and traditional motions for summary judgment. *See Lenk*, 361 S.W.3d at 611-12; *Feldman*, 977 S.W.2d at 569.

## B. Watkins's no-evidence summary-judgment motion

Watkins moved for summary judgment on Executor's claims, contending that he had no evidence of breach of contract, theft liability, or breach of a fiduciary duty including the breach of duty to account.

When a trial court grants summary judgment but does not specify the grounds, we must affirm summary judgment if any of the grounds asserted are meritorious. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A movant seeking no-evidence summary judgment must assert that there is no evidence to support an essential element of the non-movant's claim or defense on which the non-movant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). Once the motion is filed, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact as to each challenged element. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If a party moves for summary judgment on both traditional and no-evidence grounds, we generally consider the no-evidence motion first. *Lightning Oil*, 520 S.W.3d at 45. If the non-movant carries its appellate burden, we then consider whether the movant for traditional summary judgment satisfied its burden of proving that there is no genuine

12

issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law. *Id.*

A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a trial court considering such a motion is restricted to the issues presented in the motion, response, and replies. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993).

### 1.    Breach of contract

The elements of breach of contract are: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). A binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; (5) consideration; and, if the contract is in writing; and (6) execution and delivery of the contract with the intent that it be mutual and binding. *St. David's Healthcare P'ship v. Fuller*, 627 S.W.3d 707, 710 (Tex. App.—Austin 2021, pet. filed); *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied).

In his motion for summary judgment, Watkins asserted that Executor had no evidence of any offer, acceptance, mutual assent, execution and delivery, or consideration to establish a valid and enforceable contract. He urged that there was no evidence that Anthony performed or tendered performance and no evidence that Watkins breached a contract or caused

13

injury by breaching one. Specifically, Watkins asserted that there was no evidence of a contract that required him to account to Anthony for B-W Companies' funds entrusted to his control. We agree that the record contains no evidence of such a contract between Watkins and Anthony.

On appeal, Executor focuses on Watkins's alleged obligation to account based on a B-W Company's governing documents and Watkins's role as "comptroller or treasurer of the various entities":

> Bertucci's breach of contract claim rests on Watkins' duty to account for the proper use of funds, an obligation embedded in the B-W Company documents. Serving as comptroller or treasurer of the various entities, Watkins was bound to account under (i) Sections 4.11(D), (E), and (F) of TVT's bylaws; (ii) Sections 11.1 and 11.3 of AAH's limited partnership agreement; (iii) Section 12.1 of Town Vista, LP's limited partnership agreement; (iv) Section 5.09 of MCS's regulations; and (v) TVD's development agreement.

(Record references omitted.) These documents require, variously, that books of account be kept by the treasurer, the general partner, or the developer. Watkins noted on appeal that the "Executor cites provisions in the governing documents that address the duties of an office, treasurer, that Watkins did not hold." Executor alleged at trial that Watkins "acted as financial controller and treasurer" of TVT, for example, but does not cite evidence in the record that Watkins was comptroller or treasurer or general partner of the B-W Companies. Executor does not identify evidence that Watkins, individually, held these roles or had concomitant obligations to account to the B-W Companies such that Watkins might have breached a contract with Anthony rather than the B-W Companies.

In his reply brief, Executor raises a new issue that Watkins owed a contractual duty to account to Anthony in his individual capacity because "in effectuating the entity agreement [Anthony] and Watkins signed, Watkins voluntarily undertook to maintain accurate

14

books and records; his failure to do so is a breach of their implied, if not explicit agreement." But Executor does not explain how voluntarily undertaking a responsibility creates an implied contract.[5]

Because no evidence in the record supports a finding of a contract between Watkins and Anthony, we overrule Executor's issues concerning the take-nothing judgment on Executor's breach-of-contract claim. We affirm the summary judgment that Executor take nothing by his breach-of-contract claim.

### 2. Civil theft

To prevail on a claim under the Texas Theft Liability Act (TTLA), Executor must establish that Anthony had a possessory right to property, that Watkins unlawfully appropriated the property in violation of the Penal Code, and that Anthony sustained damages as a result of the theft. *See* Tex. Civ. Prac. & Rem. Code §§ 134.002, .003, .005; *Morrison v. Gage*, No. 02-15-00026-CV, 2015 WL 4043260, at *4, n.7 (Tex. App.—Fort Worth July 2 2015, no pet.) (mem. op.). A person commits an offense of theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. Tex. Penal Code § 31.03.

Watkins filed both no-evidence and traditional motions for summary judgment on the theft claim. He contended that there was no evidence that Anthony had a possessory right to the money in the TCB account and that his allegation that the funds in part belonged to the B-W

---

[5] Moreover, the only mention of an implied agreement in Executor's opening brief is an assertion that an agreement for compensation of a managing partner may not be inferred contrary to his express declaration. *See Conrad v. Judson*, 465 S.W.2d 819, 824 (Tex. App.—Dallas 1971, writ ref'd n.r.e.). Appellants may use reply briefs to respond to existing issues, not to raise new issues. *See, e.g.*, *In re K.R.S.*, No. 14-07-00080-CV, 2008 WL 2520812, at *2 (Tex. App.—Houston [14th Dist.] June 24, 2008, no pet.) (mem. op.).

Companies conclusively established that Anthony did not have the required present possessory interest. Watkins also contended that Executor had no evidence that Watkins intended to deprive Anthony of his property or that Anthony did not effectively consent to any of the expenditures Executor characterized as misappropriation. Finally, Watkins contended that Executor had no evidence that the challenged expenditures harmed Anthony. We will address Watkins's limitations-based traditional motion later in the opinion.

Anthony undisputedly provided over $1.8 million in investments and loans for the projects that went into the TCB account. Watkins testified that "there were dollars in my TCB account that were attributable to Mr. Bertucci's contributions and then there were other dollars in the account not attributable to Mr. Bertucci's contributions" and admitted that he incurred expenditures in 2005 and 2006 "out of one or more of the TCB Bank Accounts for [his] personal and/or family purposes (as distinguished from purposes related to the Bertucci-Watkins Companies)."

Executor claims that Watkins misappropriated $475,000[6] that had been placed in the TCB account and that Watkins first claimed in 2018 litigation spreadsheets that these amounts were for compensation, including $201,500 in administrative fees; a $50,000 goodwill bonus; and $224,000 in office, board, and mileage (OBM) allowances.

A person's intent to deprive and lack of consent are often inferred from the circumstances, including from the person's words and conduct. *See McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 907 (Tex. App.—Dallas 2014, pet. denied). Here,

---

[6] Executor's counsel stated at a hearing that the damages would be slightly less than this amount due to various allowances; the precise amount of the non-zero damages in evidence does not affect our analysis and is not necessary to assess whether a genuine issue of material fact on the theft claims exists.

when viewing the evidence in the light most favorable to the non-movant, *see Lightning Oil*, 520 S.W.3d at 45, we conclude that the circumstances, including Watkins's words and conduct, constitute more than a scintilla of evidence from which a fact issue as to Watkins's intent to deprive and Anthony's lack of consent could reasonably be inferred.

In July 2014, Watkins stated in an email to Executor, "I maintain financial spreadsheets of expenses. I have everything that went through the TCB books. . . . I have maintained accounting records for all our projects. . . . [Watkins's wife] and my retirement were to be funded by my investment of (12 years) of non-salaried professional services and management of the partnership projects." In a February 2015 email, Watkins stated that for thirteen of the fifteen years of his "partnership" with Anthony, Watkins "maintained daily and ongoing management, and operational oversight of our projects without pay," and that the other two years he was compensated at $6,500 a month equally with Anthony and Anthony's wife, Mildred; a spreadsheet of checks shows that Anthony and Mildred received six months of $6,500 payments between September 2005 and January 2006. Watkins stated, "[Since] construction was completed neither Tony nor I have received administrative salaries or management payments." In another February 2015 email, he said, "I do not have the luxury of a monthly pay check or being on salary."

In 2017, Watkins produced spreadsheets for the years 2005 and 2006 that focused on the TCB account. In January 2018, Watkins produced a series of spreadsheets (the 2018 Spreadsheets) for the same years that showed the $475,000 amount with the $201,500 in administrative fees, a $50,000 goodwill bonus, and $224,000 in OBM allowances. Then in 2019, Watkins presented new spreadsheets for years 2002 to 2008 reflecting no OBM. Executor noted

inconsistencies between spreadsheets produced in 2017 and those produced in 2018, which were both included in the summary-judgment record.[7]

Watkins admitted that there was no written document in which Anthony agreed Watkins could take the $475,000. At deposition, Watkins stated, "I have nothing in writing [to show his entitlement to the fees] other than what's been the history of how we operated the company." However, Watkins asserted that Anthony knew of these transactions and approved them. Watkins testified at his deposition, "Essentially, on a weekly, monthly basis, I would review those. And most of the time for TCB—or for TCB activities that involved Bertucci funds, I'd review those along with Anthony Bertucci."[8] And in an affidavit, Watkins averred:

---

[7] Although Executor challenges the admission of the court-appointed auditor's report, we note that the auditor reported that the parties agreed that audit report was not conclusive as to the OBM fees. The audit report states, "In this analysis, we have relied substantially on [Watkins's] explanation of the checks and deposits in the TCB accounts. Either party may dispute some of those allocations or determinations and such, if determined to be different from the information we have relied upon, might change the analysis we have completed." In his response to Executor's motion to exclude the report, Watkins stated that "the Report expressly recognizes that the determination of whether [Watkins's] allocations and information is correct depends upon the trier of fact." And at the hearing on the motion to deny the auditor's request to file a new report and to discharge the auditor as an expert, Executor's counsel stated that the auditor "has said this, is that the Court has to decide whether these—these OBM fees are valid charges," and Watkins's counsel responded, "I do not disagree. When the report says these are disputes, those are disputes. I'm not trying to take that away at all." Indeed, Watkins argues before this Court that the "Executor's assertion that resolution of this case depends on the existence of an adequate accounting is wrong" and "[h]is first issue, complaining of the Auditor's Report, is irrelevant and unnecessary to this appeal because that Report played no role in the Probate Court's grant of [Watkins]'s two [motions]."

Based on these considerations and the other law and evidence presented, we conclude that resolution of Executor's issues regarding the auditor's report would not alter our review and is unnecessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1.

[8] Watkins also points to his responses to requests for disclosures where he states, "The TCB account contained funds from various sources that were mixed, but that was done at the request, indeed insistence, of Bertucci, who was fully informed of and approved in regular meetings each transaction involving Bertucci funds in the TCB account, and the Watkins Bertucci projects." But answers to interrogatories and discovery responses may only be used against the party who answered them and a party's reliance upon answers it provided to

18

In fact, Bertucci was so involved in the day-to-day operations of the businesses that from 2002 to 2014, we often times met every single day of the week, either at my house, which served as the headquarters and office of our various businesses, or at other places. It was at these times that Bertucci considered transactions, went over expenses and revenue with me, discussed payments to vendors with me, reviewed spreadsheets and bank statements with me, and decided every significant aspect of the company and partnership businesses, typically with my agreement. In short, Bertucci was informed of and approved of the transactions at or before the time they occurred, including deposits into the TCB account, payments of expenses from that account, and disbursements to Bertucci and myself.

Executor objected under the Dead Man's Rule to this statement and other statements by Watkins regarding Anthony's oral statements, including that he "approved of the transactions."

The Dead Man's Rule applies "in a civil case . . . by or against a party in the party's capacity as an executor" and provides that "a party may not testify against another party about an oral statement by the testator" unless "the party's testimony about the statement is corroborated." Tex. R. Evid. 601(b)(1)(A), (2), (3)(A). Because this is a civil case by "a party in the party's capacity as an executor," the Dead Man's Rule applies. When reviewing evidentiary rulings in summary-judgment proceedings, we review for an abuse of discretion. *Galvan v. Camden Prop. Tr.*, No. 03-19-00774-CV, 2020 WL 3887975, at *2 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.) (collecting authorities); *see also Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). A trial court abuses its discretion if it acts without regard for any guiding rules or principles. *Caffe Ribs*, 487 S.W.3d at 142.

---

discovery does not provide competent summary judgment evidence. *Gomez v. American Honda Motor Co.*, No. 04-16-00342-CV, 2017 WL 3159703, at *4 (Tex. App.—San Antonio July 26, 2017, pet. denied) (mem. op.); *Schulz v. State Farm Mut. Auto. Ins.*, 930 S.W.2d 872, 876 (Tex. App.—Houston [1st Dist.] 1996, no writ).

19

We conclude that the Dead Man's Rule excludes Watkins's testimony of Anthony's oral statements indicating that he "approved of the transactions," unless corroborated. *See* Tex. R. Evid. 601(b)(3); *cf. Lewis v. Foster*, 621 S.W.2d 400, 402 (Tex. 1981) ("[T]he purpose of the Dead Man's Statute is threefold: (1) to put the parties on an equal footing at trial, (2) to prevent one, to the detriment of the other, from taking advantage of the fact that the lips of the deceased have been sealed, and (3) to render incompetent testimony as to conversations and transactions with a deceased in a suit in which the deceased might deny the conversations and transactions if he were alive."). For corroboration, Watkins points to the declaration of his wife, who confirmed that she witnessed meetings between Anthony and Watkins during which they discussed expenses paid by funds in the TCB account. But this does not corroborate testimony that Anthony approved of the expenses at issue. *See Coleman v. Coleman*, 170 S.W.3d 231, 238 (Tex. App.—Dallas 2005, pet. denied) (testimony that brothers were agreeable to arrangement does not corroborate terms of agreement). Accordingly, we sustain Executor's issue regarding the trial court's overruling of his objection and conclude that the probate court abused its discretion in permitting Watkins's testimony regarding Anthony's uncorroborated oral statements, including that he "approved of the transactions."

After excluding Watkins's testimony regarding Anthony's oral statements and when viewing the evidence in the light most favorable to the non-movant, we conclude that the record contains more than a scintilla of evidence on each of the elements of the TTLA claim. Some of the money in the account was Anthony's deposits and loans, and there is evidence that none of it was supposed to be paid in compensation to Watkins. A factfinder could reasonably infer that Watkins directed a payment intending to deprive Anthony of money without Anthony's consent. *See McCullough*, 435 S.W.3d at 906-07 (depositing money belonging to company into

20

personal accounts and not accounting for money or remitting it to company, plus refusing requests to provide information to company, is some evidence of intent to deprive company of money); *cf.* Tex. R. Civ. P. 166a(c); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989) ("If the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is inappropriate.").[9]

We reverse the probate court's summary judgment on the TTLA claim.

### 3.      Breach of fiduciary duty

Executor alleged that Watkins breached his fiduciary duties to Anthony by commingling B-W Companies' funds with his personal funds and engaging in a long course of self-dealing whereby he took monies belonging to Anthony. The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Though the existence of a duty is a question of law for the court, the underlying elements of a fiduciary duty are questions for the factfinder. *Dernick Res., Inc. v. Wilstein*, 312 S.W.3d 864, 877 (Tex. App.—Houston [1st Dist.] 2009, no pet.). A party asserting breach of fiduciary duty must establish the existence of a confidential or similar relationship giving rise to a fiduciary duty. *Doonan v. Wood*, 224 S.W.3d 271, 275 (Tex. App.—El Paso 2005, no pet.).

---

[9] Although the purposes underlying the standard for the testimony of interested witnesses in summary-judgment proceedings and the Dead Man's Rule are similar, Executor relied only upon the Dead Man's Rule in the proceedings below and did not object to Watkins's statements as failing to satisfy the standard of testimony that is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c). Objections that evidence "is not clear, positive, direct, or free from contradiction" is a formal defect that is waived if not raised in the trial court. *UT Health Sci. Ctr.-Houston v. Carver*, No. 01-16-01010-CV, 2018 WL 1473897, at *5 (Tex. App. —Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op.).

Watkins contends that no evidence establishes the existence of a fiduciary duty owed by Watkins to Anthony, individually. He contends that neither Watkins's nor Anthony's status as a shareholder, officer, director, limited partner, member, or manager of any of the B-W Companies creates a fiduciary relationship between Watkins and Anthony. He further contends that Executor produced no evidence that Watkins breached the duty or that any damages were caused by any breach. He also argues that there is no evidence that Anthony did not approve and agree to the expenditures. He further asserts that, as an officer or other participant in the B-W Companies, Anthony had responsibilities to maintain books and records, to account, and to act in the best interest of the B-W Companies, and that Executor produced no evidence that Anthony did not do so, thereby participating in or knowing of the disputed transactions.

Executor moved for partial summary judgment that, as the person controlling the TCB account containing funds entrusted to him, Watkins owed a fiduciary duty and that a fiduciary has an ongoing duty to account fully for assets within his trust, citing *Sierad v. Barnett*, 164 S.W.3d 471, 477 (Tex. App.—Dallas 2005, no pet.). On appeal, Executor characterizes the duty to account as part of Watkins's fiduciary duty.

While status as a limited partner alone does not give rise to a fiduciary duty to other limited partners, a party who is a limited partner can owe fiduciary duties to other limited partners when that party, wearing a different hat, exerts operating control over the affairs of the limited partnership. *Strebel v. Wimberly*, 371 S.W.3d 267, 281 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).[10] Anthony and Watkins were limited partners in AAH, a limited partnership.

---

[10] *See* Tex. Bus. Orgs. Code § 153.003 (provisions of Chapter 152 governing non-limited partnerships apply unless inconsistent with the nature and role of a limited partner); *see also id.* §§ 152.204(a)(1) ("A partner owes to . . . the other partners . . . a duty of loyalty[.]"), .205(1)(B) ("a partner's duty of loyalty includes accounting to and holding for the partnership property,

22

Executor relies in part on Watkins's statement in an email that he is "the managing, operational and accounting partner" to argue that Watkins thereby assumed fiduciary duties to Anthony. Watkins disputes the amount of control he had over the Companies, arguing that he "was a minority stakeholder in the [B-W] Companies, holding subordinate positions at [Anthony's] pleasure" and "[t]he only 'control persons' were [Anthony] and, after his disability and death, Executor."

We conclude that fact issues bar summary judgment on the existence of a fiduciary duty. For the same reasons that we concluded there is more than a scintilla of evidence supporting the TTLA theft claim, we conclude that there exists more than a scintilla of evidence of a breach of fiduciary duty that caused damages: namely, that there is more than a scintilla of evidence that Watkins received $475,000 for administrative fees, a goodwill bonus, and OBM allowances from an account that included Anthony's funds that were not designated to provide income to Watkins and that were not approved or properly accounted for by Watkins. *See Sierad*, 164 S.W.3d at 477.

Watkins contends that the Executor fails to distinguish between TCB and Watkins. Watkins claims that funds in the partnership account, even if they are undistributed partnership profits, are not the property of, subject to the control of, or income to the partners. He posits that TCB's account was not his individual account and thus, when he wrote a check on that account, he did so as an agent of the partnership, and not as an individual. He argues that

profit, or benefit derived by the partner . . . from use by the partner of partnership property"), .210 ("A partner is liable to . . . the other partners for . . . a violation of a duty to the partnership or other partners under this chapter that causes harm to the partnership or the other partners"), , .211(b)(2) ("A partner may maintain an action against the partnership or another partner for legal or equitable relief, including an accounting of partnership business, to: . . . enforce a right under this chapter.").

23

evidence of funds entrusted to or disbursed by TCB is no evidence of a claim against him individually because deposits into the TCB account did not entrust funds to him individually. He concludes that TCB, not Watkins, had possession of the funds in its account and that TCB made the criticized distributions.

However, in his sworn declaration attached to his response to Executor's motion for partial summary judgment, Watkins declared that "[Anthony] was aware that TCB, an original limited partner in TVLP, had a bank account at Bank of Texas *under my control*," that "[Anthony] was aware that I also used the TCB account for TCB *and my business*, and that TVLP funds would be mixed with funds that solely belonged to TCB *and myself*"; and that "[Anthony] knew that the TCB account contained TCB money [as] well *as my funds*." (Emphases added.) We conclude that at least a fact issue exists as to whether funds placed in the TCB account were entrusted to Watkins individually.[11]

We conclude that neither party is entitled to summary judgment on the issue of whether a fiduciary relationship existed or whether evidence supports a claim for its breach. The trial court did not err by denying Executor's motion for partial summary judgment on the fiduciary-duty issue but erred by granting Watkins's motion for summary judgment against Executor's claim for breach of fiduciary duty.

---

[11] Watkins also argues that, because Watkins's commingling of his funds with the funds from Anthony in the TCB account was with Anthony's permission, the Executor had the burden of tracing such funds for each of the Companies that he alleges were misappropriated, citing *Logan v. Logan*, 156 S.W.2d 507, 510-11 (Tex. 1941) and *In re Estate of Brimberry*, No. 12-04-00154-CV, 2006 WL 861483, at *5 (Tex. App.—Tyler Mar. 31, 2006, pet. denied) (mem. op.). That, however, was an argument made in the event the derivative claims were presented to and considered by this Court. Because we have found that only Executor's non-derivative claims were presented, the tracing argument is inapposite.

## C. Watkins's traditional summary-judgment motion

Watkins moved for traditional summary judgment, arguing that Executor's claims were barred or defeated by his defenses. He contended that the claims were barred by statutes of limitations that were not tolled. He also contended that the claims were waived, that the complained-of actions were ratified, or that the claims were barred by exculpation clauses in certain B-W Companies' documents.

A traditional summary judgment is proper if the movant submits sufficient evidence to establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). If the movant meets this burden, the burden shifts to the non-movant to raise a fact issue. *Amedisys*, 437 S.W.3d at 511. We review summary judgments de novo, taking as true evidence favorable to the non-movant and indulging reasonable inferences and resolving doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense. *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021).

### 1. Limitations and tolling

In his traditional motion for summary judgment, Watkins asserted that, because Anthony filed this suit after the applicable statutes of limitations ran, Executor's suit is time-barred. He contended that the theft claim was barred by limitations except for a claim regarding a $2,168.83 transaction in August 2014. Watkins asserted that the statute of limitations was not tolled by the discovery rule because the check transactions were not inherently undiscoverable.

25

He argued that, as an officer and member of the B-W Companies, Anthony had the power and responsibility to monitor the accounts from which the funds were allegedly stolen. Watkins contended that Anthony monitored the accounts by meeting with Watkins and approving payments as they were made. Watkins also argued that the transactions made more than two years before the litigation was filed on December 15, 2015, were discoverable because the records were kept in a shared storage unit. Executor responded that limitations was tolled by the discovery rule and fraudulent concealment, among other theories.

A defendant has the burden to plead, prove, and secure findings to sustain the limitations affirmative defense. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *see also* Tex. R. Civ. P. 94 (statute of limitations is affirmative defense). In response, a plaintiff may raise the discovery rule and, if it applies to the claim asserted, may seek to have his failure to file suit within the normal limitations period excused. *Woods*, 769 S.W.2d at 517. In cases in which the plaintiff pleads the discovery rule, the defendant moving for summary judgment on limitations bears the additional burden of negating the rule by either conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary-judgment evidence negates it. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (per curiam).

The statute of limitations for claims of breach of fiduciary duties is four years. Tex. Civ. Prac. & Rem. Code § 16.004(a)(5). Claims of civil theft of personal property are limited after two years. *Id.* § 16.003(a); *Gonyea v. Scott*, 541 S.W.3d 238, 248 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Absent tolling, Executor's claims are barred by limitations. Executor's claims against Watkins were filed in February 2016. In his traditional motion, Watkins asserted that the

26

Executor's sworn answers to interrogatories show that the alleged comingling that forms the basis of his breach-of-fiduciary-duties claim began in 2002 and ended on May 25, 2011—the date of the last alleged deposit of Anthony's funds into TCB's account.[12]  Watkins further asserted that Executor identified only one "potential" misappropriation of Anthony's funds that occurred after the year 2008 and that Executor appears to have dropped his claim for that amount on appeal to focus on the $475,000 OBM payments from 2005 and 2006.

Executor disagrees, contending that the discovery rule bars the running of limitations.  He contends that Anthony did not prove the absence of a genuine issue of fact about when Anthony or Executor discovered or should have discovered the nature of the injury.  The discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action.  *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).  For the discovery rule to apply, "the nature of the injury must be inherently undiscoverable" and "the injury itself must be objectively verifiable."  *Id.*

Watkins presented evidence intended to prove that Anthony was aware of the deposited funds, distributions, and expenditures from the TCB account.  In a deposition, Watkins responded to a question about how he kept track of the transactions in the bank accounts by testifying:

> Essentially, on a weekly, monthly basis, I would review those.  And *most of the time* for TCB—or for TCB activities that involved Bertucci funds, I'd review those along with Anthony Bertucci. . . .  If you're asking me on a monthly,

---

[12]  We note that Watkins's contention that "comingling ended" on May 25, 2011 relies on evidence in spreadsheets that payments by Anthony and Mildred Bertucci to Watkins or the TCB account ended then, but those spreadsheets do not show when or if the deposited funds were no longer present in the account along with other funds.

27

weekly basis did we know the balance and know what checks had been written, the answer is yes.

(Emphasis added.)  In a declaration, Watkins averred:

> [Anthony] Bertucci reviewed the pertinent receipts and expenses with me regularly, and was fully informed of receipts and disbursements for TVLP from the TCB account.  When Bertucci and Watkins created [AAHP] the general partner of [AAH], Bertucci instructed me to continue to utilize the TCB account for those receipts and disbursements as well.  And Bertucci continued to regularly review expenditures and receipts for the entities with me.

When asked how he kept the books, Watkins responded:

> Basically I would identify the expenses that we incurred.  Tony and I—excuse me—Mr. Bertucci and I would sit down and on a monthly basis just go over what it is that we needed to pay, who we could afford to pay and when and then basically just make those payments.

Watkins also averred in a declaration:

> In fact, [Anthony] Bertucci was so involved in the day-to-day operations of the businesses that from 2002 to 2014, we often times met every single day of the week, either at my house, which served as the headquarters and office of our various businesses, or at other places.  It was at these times that Bertucci considered transactions, went over expenses and revenue with me, discussed payments to vendors with me, reviewed spreadsheets and bank statements with me, and decided every significant aspect of the company and partnership businesses, typically with my agreement.  *In short, Bertucci was informed of and approved of the transactions at or before the time they occurred, including deposits into the TCB account, payments of expenses from that account, and disbursements to Bertucci and myself.*[13]

---

[13]  Watkins continued in the declaration:

The basis of [the Executor's] claim asserted in this lawsuit, that I did not account to Bertucci for the use of partnership or company funds, is simply false.  I fully accounted to Bertucci years ago, when the transactions occurred, and Bertucci was completely satisfied with the accounting.  Never once did Bertucci ask for an additional audit of the

(Emphasis added.)

Executor argued, however, that "Watkins presented no competent evidence that Bertucci was aware of Watkins' diversions prior to 2014."[14] We have held above that the trial court erred by overruling Executor's Dead Man's Rule objection to Watkins's evidence to the extent that the court permitted testimony that Anthony approved of these transactions, as approval would generally be considered an "oral statement by the testator." Watkins's various statements cited above are inconsistent regarding how often he and Anthony met to review transactions, undermining their definitiveness. Most critically, however, Watkins testified in his deposition that he met with Anthony "most of the time." That qualification creates at least a fact

books and records of any of the entities and any time he had questions regarding particular expenses, I fully explained them to him. What [the Executor] is actually complaining of is that a decade or more subsequent to Bertucci and I fully accounting for and going over every expenditure, he is not satisfied that I have 'reaccounted' to him, but wants a retroactive audit of our businesses.

[14] The Executor also argues that Watkins admitted that he was "the only individual with personal knowledge of the funds deposited into that account or the checks written from that account." But the full quote of this "admission" in Watkins's response to the Executor's motion to exclude the auditor's report is:

In section D of his Motion, [the Executor] complains that [the auditor] has somehow demonstrated that he is partisan and biased because of the number of email communications he had with counsel for Watkins versus counsel for [the Executor] during the period of September to October 2018. It is an odd assertion, given the fact that it was during this period that [the auditor] was attempting to complete his reconciliation of the TCB account, and therefore had to communicate with the only individual with personal knowledge of the funds deposited into that account or the checks written from that account.

Thus, Watkins's admission concerned the period of "September to October 2018" after Anthony's passing and has no bearing on whether Anthony had knowledge of the funds deposited into TCB and the checks written from that account.

29

question regarding whether Anthony reviewed or approved all of the transactions involving his funds flowing through the TCB account.

Watkins argues that the evidence nevertheless showed that Anthony was informed of the transactions sufficiently to prompt a duty of inquiry that starts the running of the limitations period. *See HECI*, 982 S.W.2d at 886 (discovery rule delays accrual of claim until "the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise" to claim).

However, our holding that fact issues persist on whether Watkins owed a fiduciary duty to Anthony and Executor also prevents summary judgment that Anthony should have known of facts giving rise to his claim. The Texas Supreme Court has held that a fiduciary's misconduct is inherently undiscoverable. *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (breach of attorney's duty to disclose material facts to client is tantamount to concealment); *Slay v. Burnett Tr.*, 187 S.W.2d 377, 394 (Tex. 1945) (trustee's actions did not prompt duty to investigate). The Texas Supreme Court explained that the reason underlying both decisions is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996) (citing *Willis*, 760 S.W.2d at 645 ("Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved."), and *Slay*, 187 S.W.2d at 394 (knowledge of facts did not cause trust beneficiaries or co-trustees to suspect wrongdoing by other co-trustees)). However, while a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct so long as that relationship exists, when the fact of misconduct becomes apparent, it can no longer be ignored, regardless of the nature of the relationship. *S.V.*, 933 S.W.2d at 8; *see also Sandt v. Energy Maint. Servs. Grp. I,*

30

*LLC*, 534 S.W.3d 626, 640 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("While a company has no duty to inquire into the conduct of its officers or other fiduciaries, 'when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship.' Moreover, even 'a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs.'" (citations omitted)).

The apparent inconsistency in Watkins's assertions from 2014 through 2019 regarding his entitlement to income flowing from the TCB account provides more than a scintilla of evidence that no misconduct previously had become apparent to Anthony that prompted a duty to diligently inquire into Watkins's actions more than four years before his claims were filed in February 2016. Watkins said in 2014 and 2015 that he was not paid for his work, but his 2018 spreadsheets indicate he received money for his work. These apparent inconsistencies provide some evidence creating a fact question regarding Watkins's assertions that he disclosed data that informed Anthony about the transactions, prompting at least a duty to inquire further.

We emphasize that we are not concluding that Executor's suit was timely filed. We conclude only that fact issues exist regarding whether Executor's claims for theft and breach of fiduciary duty are barred by limitations. We conclude that the trial court erred to the extent it found otherwise.[15]

---

[15] Because we conclude that there is at least a fact issue regarding whether the discovery rule tolled limitations long enough to preserve Executor's claims, we need not consider his alternate claim that limitations were tolled by fraudulent concealment or that he timely filed his claims as counterclaims arising out of the same transaction or occurrence as other claims filed in the underlying cause, *see* Tex. Civ. Prac. & Rem. Code § 16.069.

### 2. Waiver, ratification, and exculpation

In his traditional motion, Watkins urged that Executor's counterclaims were barred, as a matter of law, by Anthony's waiver and ratification of the acts Executor alleges form the basis of his claims, and as to the TVLP Partnership and MidCrowne Senior Pavilion, LP, by exculpatory provisions of their governing documents. Watkins alleged that Anthony approved and accepted the conduct and transactions Executor sued upon, barring Executor's claims.[16]

Ratification occurs when a person who knows all the material facts confirms or adopts a prior act that did not then legally bind him and which he could have repudiated. *Lawrence v. Reyna Realty Grp.*, 434 S.W.3d 667, 674 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of a prior act; and (3) with the intention of giving validity to the prior act. *Id*. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156-57 (Tex. 2003). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver is ordinarily a question of fact unless the surrounding facts and circumstances are undisputed, in which case the question becomes one of law. *Jernigan*, 111 S.W.3d at 156-57.

We have held that a fact question exists regarding whether Anthony knew or should have known of Watkins's alleged breach of fiduciary duty and theft and that the Dead

---

[16] The absence of special exception to this pleading does not affect our analysis of this issue.

32

Man's Rule bars Watkins's testimony to the extent it is offered to show that Anthony approved the disputed transactions from the TCB account. The record similarly reveals a fact issue regarding whether Anthony approved the disputed transactions with full knowledge of the facts and with an intent to give validity to the prior acts. It similarly reveals a fact question regarding whether Anthony intentionally relinquished a known right when signing the MidCrowne document. Further, Watkins's insistence that the TVLP and MidCrowne documents waived Anthony's claims raised here does not address the fact question regarding whether a fiduciary duty arose under the AAH relationship. Finally, the TVLP and MidCrowne documents do not purport to absolve Watkins of all potential wrongdoing regarding the TCB account and funds therein.

We conclude that the trial court erred by granting summary judgment based on waiver, ratification, or exculpation.

## CONCLUSION

We affirm the take-nothing judgment rendered on Executor Christopher Bertucci's breach-of-contract claim and on the derivative claims brought on behalf of American Affordable Homes & Properties, Inc.; American Affordable Homes, LP; Town Vista Development, LLC; Town Vista Terrace, Inc.; and MidCrowne Senior SLP, LLC (the B-W Companies).

We reverse the trial court's overruling of Executor Christopher Bertucci's objection based on the Dead Man's Rule to the extent that it admitted evidence indicating that Anthony Bertucci orally approved transactions; we otherwise overrule Executor's appellate complaint regarding the trial court's ruling on that objection.

33

We reverse the trial court's take-nothing summary judgment on Executor's claims for breach of fiduciary duty, including the duty to account, and for recovery under the Texas Theft Liability Act. We reverse the trial court's summary judgment to the extent it was based on Watkins's affirmative defenses of limitations, waiver, ratification, and exculpation.

Because we did not need to address the issues regarding the auditor's report to dispose of this appeal, we expressly do not rule on the trial court's decisions regarding the auditor's report. *See* Tex. R. App. P. 47.1 (opinions must be as brief as practicable while addressing every issue raised and necessary to final disposition of appeal).

Except for the breach-of-contract claim and the derivative claims brought on behalf of the B-W Companies, we remand this cause for further proceedings.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Goodwin, Baker, Triana, Kelly, and Smith
    Concurring and Dissenting Opinion by Justice Triana, joined by Justice Kelly

Affirmed in Part, Reversed in Part, Remanded

Filed: December 30, 2022